IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

PATSY ROMERO, individually,
and as parent and natural
guardian of VANESSA ROMERO,
and VANESSA ROMERO,
individually,

             Plaintiffs,

v.                                              No. CIV 98-0283 MV/LCS

MENTAL HEALTH MANAGEMENT,
a Virginia Corporation, d/b/a
PINON HILLS HOSPITAL,

             Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendant's Motion for Partial Summary Judgement

on Punitive Damages Claims, filed February 25, 1999 **[Doc. 44]**. The Court, having considered the

motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not

well taken and will be **DENIED**, as explained below.

## BACKGROUND

Plaintiffs Patsy Romero and Vanessa Romero bring claims of negligent hiring, negligent

management and medical malpractice against Defendant, Mental Health Management ("MHM").

For the purpose of resolving this motion, the Court finds that the following are the undisputed

material facts:

1.        MHM owned the Piñon Hills Residential Treatment Center ("Piñon Hills") in Velarde,

New Mexico, in 1995.

2.      On or about September 19, 1994, Eduardo Montano ("Montano") applied for a job with MHM. In response to the question "Have you ever been convicted of a felony (other than misdemeanor or summary offense)?" Montano checked the box "yes" on the job application. The application asked him to explain the conviction and Montano stated in response "Substance Abuser."

3.      In fact, Montano's criminal history report reflects a conviction for armed robbery, multiple convictions for burglary, and a habitual offender conviction. In addition, Montano was charged with kidnaping and criminal sexual penetration in connection with the armed robbery offense, although those charges were dismissed when he pled guilty to the armed robbery charge.

4.      MHM hired Montano on March 1, 1995, as a mental health worker at Piñon Hills.

5.      The New Mexico Children, Youth and Families Department ("CYFD") licenses residential treatment centers in New Mexico. CYFD requires treatment centers to pay CYFD to conduct criminal records checks of employees at the center in order to determine whether they have any felony convictions related to the care and custody of children.

6.      In conducting its investigation, CYFD discovered Montano's numerous felony convictions. CYFD asked him to explain at least one arrest pertaining to the care and custody of children.

7.      The documents obtained by CYFD are not routinely forwarded to the employer nor does the employer have direct access to this information. However, MHM could have obtained these documents by requiring Montano to request the documents from CYFD and forward the documents to MHM for its review.

8.      On July 13, 1995, four months after he began working at the facility, CYFD sent MHM a letter clearing Montano to work at the facility, stating that the background check did not reveal any felony convictions related to the care and custody of children.

9.    Other than the CYFD background check, no MHM employee took any steps to investigate Montano's criminal history. Specifically, no MHM employee ever asked Montano about his convictions. MHM had no policy in place for investigating the criminal history of applicants other than the CYFD check.

10.    In September of 1995, Vanessa Romero was 16 years old and a resident of the Pinon Hills Center in Velarde.

11.    On or about September 21, 1995, Montano was transporting Vanessa Romero and a second patient, Michael Mora ("Mora"), to and from a dental appointment outside the facility, in a van owned by the facility.

12.    During the trip, Montano suggested that Vanessa Romero and Mora have sex in the van, which they did.

13.    Montano then forced Vanessa Romero to have sex with him.

14.    On or about October 31, 1995, Vanessa Romero reported the rape to MHM officials.

15.    MHM immediately transferred Vanessa Romero out of the facility, placed Montano on leave, notified the police and child protective services, and undertook an internal investigation.

16.    Montano was subsequently returned to work.

17.    In May 1996, Piñon Hills was sold to another company. This company subsequently fired Montano as a result of allegations of sexually inappropriate comments made to patients.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party,

determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendant seeks summary judgment on Plaintiffs' punitive damages claims, arguing that even if it acted negligently in hiring Montano, Plaintiffs cannot produce sufficient evidence to demonstrate a culpable mental state on its part to support an award of punitive damages. Plaintiffs respond that Defendant's conduct in failing to investigate Montano's background prior to his employment was so

wanton and reckless that punitive damages are appropriate. The Court finds Plaintiffs' argument persuasive.

As the New Mexico Supreme Court recently clarified, the imposition of punitive damages in New Mexico requires more than gross negligence on the part of the defendant. *Paiz v. State Farm Fire & Cas.*, 118 N.M. 203, 211, 880 P.2d 300, 308 (1994). Rather,

> [s]ince punitive damages are assessed for punishment and not for reparation, a positive element of conscious wrongdoing is always required. It must be shown either that the defendant was actuated by ill will, malice, or evil motive . . ., or by fraudulent purposes, or that he was so wanton and reckless as to evince a conscious disregard of the rights of others.

*Id.* (emphasis, citation and quotation marks omitted). Punitive damages may be awarded in a case asserting negligent hiring if the employer's conduct rises to the level of conscious disregard for the rights and well-being of others. *Gillingham v. Reliable Chevrolet*, 126 N.M. 30, 996 P.2d 197, 201 (Ct.App. 1998); *DeMatteo v. Simon*, 112 N.M. 112, 114-15, 812 P.2d 361, 363-64 (Ct.App. 1991).

Thus, in the recent case of *Gillingham v. Reliable Chevrolet, supra*, 996 P.2d at 201, the New Mexico Court of Appeals upheld a jury award of punitive damages against an auto dealer who employed a sales representative based on his representation that he had a valid drivers license and had only received one citation for speeding. *Id.* In reality, the salesperson's license had been suspended and he had received several citations, information which the employer could have easily discovered through a computer check from its own office. *Id.* The appellate court concluded that the evidence supported the reasonable inference that,

> (1) Defendant did not investigate [the salesperson's] driving record or take any steps to ensure that he would drive safely; and (2) the dealership focused only on the potential economic benefit to be derived from hiring a new salesperson and it did not care about the risk of harm to the public posed by an unlicenced or incompetent driver. Such behavior may qualify as reckless or wanton conduct.

*Id.*; *see also DeMatteo*, 112 N.M. at 114-15 (finding of utter indifference warranted based on evidence that construction company knew of several of employee's driving citations, would not have hired him had it know his complete driving record, and new how to obtain the records for its review).

Likewise, in the present case, viewing the facts in the light most favorable to Plaintiffs, the non-moving party, the record contains sufficient evidence to warrant the inference that Defendant's conduct "was so wanton and reckless as to evince a conscious disregard of the rights of others." *Paiz*, 118 N.M. at 211. Defendant hired Montano to a position which required that he work directly, and unsupervised, with mentally ill children. These children were entrusted to his sole care and custody for at least certain periods of time. Defendant placed Montano in this position knowing that he had been convicted of a felony but without ever even inquiring of Montano what the nature of that offense was. Defendant attempts to rely on Montano's own self-description of these offenses to evade its own responsibility. However, one does not have to be intimately familiar with criminal law to know that "Substance Abuser" is not a recognized felony. The least Defendant could have done was to ask Montano what this meant. It did not.

Further, Defendant could have done much more. Indeed, it could have required Montano to retrieve his criminal history report from CYFD for it to review directly. It did not. Instead, Defendant attempts to rely on CYFD, again to evade its own responsibility in screening its employees. Yet, Defendant had employed Montano four months prior to the CYFD clearance. This would permit a reasonable juror to conclude that Defendant so disregarded the rights of the mentally ill children in its care that it did not even attempt to verify that its employees had not been convicted of felonies involving harm to children prior to placing those employees in positions of direct control over its young and particularly vulnerable patients.

Finally, Defendant implies that since Montano had been convicted "only" of burglary and armed robbery, not of any sex offenses, it would have employed him even if it knew of the full content of his criminal record. If it is true that Defendant would have employed an individual to act as a caretaker and at least temporary custodian for mentally ill children when that person had pled guilty to a violent offense-- the underlying facts of which appear to have involved a sexual offense-- without even investigating the facts, then Defendant has itself amply demonstrated its own wanton disregard for the rights of others.

The undisputed material facts support the inference that Defendant was concerned solely with its own profits and utterly disregarded the rights of others in hiring Montano. Accordingly, summary judgment in Defendant's favor on the punitive damages claims is not warranted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgement on Punitive Damages Claims **[Doc. 44]** is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
DISTRICT COURT JUDGE

Attorney for Plaintiffs:
Kevin A. Zangara

Attorney for Defendants:
Michael W. Brennan